1

2

3

4

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
5

**RENO, NEVADA**

6

7

| | | |
|---|---|---|
| TREASURY SOLUTIONS HOLDINGS, INC., ) | 3:10-CV-00031-ECR-RAM | |

8   A Georgia corporation, TREASURY      )
    SOLUTIONS, LLC., a Georgia limited )
9   liability company,                 )
                                       )
10       Plaintiffs,                   )              **Order**
                                       )
11  vs.                                )
                                       )
12  UPROMISE, INC., a Delaware         )
    corporation; UPROMISE INVESTMENTS, )
13  INC., a Delaware corporation; THE  )
    VANGUARD GROUP, INC., a            )
14  Pennsylvania corporation;          )
    VANGUARD MARKETING CORPORATION, a  )
15  Pennsylvania corporation; JOHN     )
    DOES 1 through 10, individuals;    )
16  ABLE-BAKER COMPANY 1-10,           )
    partnerships; and BLACK & WHITE    )
17  INC. 1-10, corporations,           )
                                       )
18       Defendant.                    )
                                       )
19  _____)

20

21          This case involves allegations of tortious interference with

22  contractual relationship and tortious interference with prospective

23  business advantage.

24          Plaintiffs Treasury Solutions, Holdings, Inc., and Treasury

25  Solutions, LLC. filed a complaint (#1-1) against Defendants

26  Upromise, Inc., Upromise Investments, Inc., The Vanguard Group,

27  Inc., and Vanguard Marketing Corporation, alleging that Defendants

28

1 tortiously interfered with their contractual and prospective
2 business relationship with the State of Nevada.

3     Now pending are three motions to dismiss.  The motions are
4 ripe, and we now rule on them.

5

6                   **I. Background**

7     Plaintiff Treasury Solutions Holdings, Inc. is a Georgia
8 corporation formed in December 2007 as successor to Treasury
9 Solutions, LLC.  (Compl. ¶ 1 (#1-1).)  Treasury Solutions, LLC is a
10 Georgia limited liability company formerly known as GIF Plan
11 Advisors, LLC.  (Id. ¶ 2.)  GIF Plan Advisors, LLC was an affiliate
12 to GIF Services, LLC. ("GIF"). (Id. ¶ 1.)

13     Defendant Upromise, Inc. ("Upromise") is a Delaware corporation
14 with its principal place of business in Newton, MA.  (Id. ¶ 3.)
15 Defendant Upromise Investments, Inc. ("UII") is an Upromise, Inc.
16 subsidiary, and a Delaware corporation with its principal place of
17 business in Newton, MA.  (Id. ¶ 4.)  The Vanguard Group, Inc.
18 ("Vanguard") is a Pennsylvania corporation with its current
19 principal place of business in Pennsylvania.  (Id. ¶ 5.)  Vanguard
20 Marketing Corporation ("VMC") is a Pennsylvania corporation with its
21 principal place of business in Pennsylvania.  (Id. ¶ 6.)

22     Plaintiffs allege that in 2000, GIF submitted a proposal to the
23 State of Nevada whereby the company offered to fast track the
24 development of a multi-manager college savings plan ("CSP").  (Id. ¶
25 13.)  GIF was selected as "Plan Advisor" by the State of Nevada.
26 (Id. ¶ 14.)  GIF, as Plan Advisor, assisted in the drafting of the
27 proposed legislation, designed a plan for a multi-manager CSP,

28                       2

interviewed financial institutions, and provided all necessary staffing and funding. (Id. ¶ 15-16.) The compensation for GIF was designed similarly to that of a securities lending program with a predetermined split of future revenues under which GIF was to be paid one third of future program fees and the State of Nevada was to be paid two thirds. (Id. ¶ 17-18.)

The Nevada Legislature passed enabling legislation to establish a CSP which the Governor signed on June 6, 2001. (Id. ¶ 20.) On or about August 24, 2001, the State of Nevada and GIF Services, LLC entered into a contract relating to the State's CSP. (Id. ¶ 22.) Plaintiffs assisted Nevada in selecting and negotiating a contract with Strong Capital to become the first program manager of its CSP. (Id. ¶ 23.) On or about March 5, 2002, Upromise became the second Program Manager for the Nevada CSP, and UII became the direct program manager. (Id. ¶ 28.)

On or about December 3, 2002, GIF assigned its rights under the contract to GIF Plan Advisors, LLC, an affiliate dedicated solely to serving as Plan Advisor. (Id. ¶ 30.) In July 2005, GIF Plan Advisors, LLC changed its name to Treasury Solutions, LLC. (Id.)

In 2003, the State of Nevada removed Strong Capital funds as eligible investments and tranferred all accounts to UII as program manager. (Id. ¶ 31.)

On or about March 9, 2004, the State of Nevada and Treasury Solutions, LLC. entered into the first amendment to the contract. (Id. ¶ 32.) The amendment reduced Plan Advisor fees and extended the contract term to December 31, 2031 with provisions allowing the state to terminate the Plan Advisor's services on or after the

original contract term providing the Plan Advisor would continue to collect fees on accounts that had been opened prior to the reduction of its duties. (Id. ¶ 33.) The amendment also provided that Nevada could amend the CSP program to adjust program fees with the result that thirty-three and one-third percent of the adjusted fee would accrue to the Plan Advisor in lieu of the fees it otherwise would have received. (Id. ¶ 34.)

In May 2006, the Plan Advisor agreement was amended to further reduce the fee paid to the Plan Advisor, to eliminate the continuation of services that the Plan Advisor would otherwise have been obligated to provide, and capped fees owed to the Plan Advisor based on accounts and assets established prior to December 31, 2006. (Id. ¶ 35.) Under the amendment, Treasury Solutions would still receive one-third of the program fees, but only program fees associated with those accounts that were opened prior to December 31, 2006. (Id.) As consideration for the reduction in fees, Treasury Solutions would no longer be obligated to provide plan advisory services. (Id.) Plaintiffs allege that after May 2006, the State of Nevada did not retain the services of another plan advisor or financial advisor with regard to its CSP, relying on Upromise for advice. (Id. ¶ 36.)

Plaintiffs allege that on or about October 2006, Ed Ferko, Senior Manager for the Education Markets Group for Vanguard and/or other employees or representatives of Vanguard suggested to the Nevada State Treasurer's Office that the State of Nevada should conclude or terminate its compensation arrangement with Treasury Solutions. (Id. ¶ 37.) Plaintiffs also allege that about this same

4

time, Jim Fadule, President of UII and Upromise and/or other
employees or representatives of UII began to pressure or otherwise
suggest to the Nevada State Treasurer's Office that the compensation
arrangement with Treasury Solutions should be discontinued,
concluded or terminated.  (Id. ¶ 38.)

On or about December 28, 2006, the State of Nevada approved an
amendment to the Direct Program Management Agreement with UII
calling for the termination of the existing contract with the Plan
Advisor, the Plaintiffs, and assignment to UII of the fees
previously being paid to Plaintiffs under Plaintiffs' contract with
the State of Nevada. (Id. ¶ 39-40.)  The amendment to the UII
contract allegedly provided for the Program Manager to retain fees
that the State of Nevada had contracted to be paid to Treasury
Solutions as Plan Advisor, and required that the Plan Advisor
agreement between Nevada and Plaintiff be terminated or assigned to
UII.  (Id. ¶ 43-44.)  A condition of the amendment was that the
contract with the Plan Advisor be closed out by December 15, 2006.
(Id. ¶ 45.)  No termination or assignment of the Plan Advisor
contract between Treasury Solutions and Nevada has occurred.  (Id. ¶
46.)  Plaintiffs allege that through this amendment, UII modified
its obligations to the State of Nevada and circumvented and
eliminated the involvement and influence of Treasury Solutions as
Plan Advisor.  (Id. ¶ 52.)

Plaintiffs claim that Treasury Solutions has received no
compensation under its contract with the State of Nevada since
January 2007, and Defendants have collected and retained those fees
contractually obligated to be paid to Treasury Solutions, and paid

5

1  to the State of Nevada other fees contractually obligated to be paid
2  to Treasury Solutions.  (Id. ¶ 47.)

3      Plaintiffs allege that on or about December 29, 2006, they
4  discovered that Defendants had acted to and succeeded in
5  circumventing, interfering, and obstructing the Treasury Solutions
6  contract with Nevada, particularly the compensation provisions of
7  that contract.  (Id. ¶ 48.)  In January 2007, Treasury Solutions
8  notified the Nevada State Treasurer of its concern, and in May 2007,
9  the Nevada State Treasurer's Office sent to Treasury Solutions a
10  Termination Agreement for consideration.  (Id. ¶ 49-50.)  Treasury
11  Solutions did not agree to the termination.  (Id. ¶ 51.)  On or
12  about December 27, 2007, Treasury Solutions, LLC. assigned all of
13  its rights under the contracts and amendments to Treasury Solutions
14  Holdings, Inc.  (Id. ¶ 53.)

15      On December 28, 2009, Plaintiffs filed suit for tortious
16  interference with contractual relations and tortious interference
17  with prospective business advantage in the Second Judicial District
18  Court of the State of Nevada in and for the County of Washoe.  On
19  January 15, 2010, Defendants Upromise and UII removed the action to
20  federal court, invoking our diversity jurisdiction.  (Notice of
21  Removal (#1).)  On January 20, 2010, Defendants Vanguard and VMC
22  joined in the notice of removal.  (Joinder (#8).)

23      On March 8, 2010, Vanguard and VMC filed a motion to dismiss
24  based on failure to state a claim (#20), and Upromise and UII filed
25  motions to dismiss based on failure to state a claim (#22), and
26  failure to join an indispensable party (#21). On April 16, 2010,
27
28                                6

1  Plaintiffs opposed each motion (#25, 26, 27) and on May 10, 2010,
2  Defendants replied (#36, 37, 38).

3

4              **II. Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)**

5         A. Standard

6         A motion to dismiss under Federal Rule of Civil Procedure
7  12(b)(6) will only be granted if the complaint fails to "state a
8  claim to relief that is plausible on its face." Bell Atl. Corp. v.
9  Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 129
10 S. Ct. 1937, 1953 (2009) (clarifying that Twombly applies to
11 pleadings in "all civil actions"). On a motion to dismiss, except
12 where a heightened pleading standard applies, "we presum[e] that
13 general allegations embrace those specific facts that are necessary
14 to support the claim." Lujan v. Defenders of Wildlife, 504 U.S.
15 555, 561 (1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S.
16 871, 889 (1990)) (alteration in original); see also Erickson v.
17 Pardus, 551 U.S. 89, 93 (2007) (noting that "[s]pecific facts are
18 not necessary; the statement need only give the defendant fair
19 notice of what the . . . claim is and the grounds upon which it
20 rests.") (internal quotation marks omitted). Moreover, "[a]ll
21 allegations of material fact in the complaint are taken as true and
22 construed in the light most favorable to the non-moving party." In
23 re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996)
24 (citation omitted).

25        Although courts generally assume the facts alleged are true,
26 courts do not "assume the truth of legal conclusions merely because
27 they are cast in the form of factual allegations." W. Mining

28                                    7

1  <u>Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).  Accordingly,

2  "[c]onclusory allegations and unwarranted inferences are

3  insufficient to defeat a motion to dismiss."  <u>In re Stac Elecs.</u>, 89

4  F.3d at 1403 (citation omitted).

5      Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is

6  normally limited to the complaint itself.  <u>See</u> <u>Lee v. City of L.A.</u>,

7  250 F.3d 668, 688 (9th Cir. 2001).  If the district court relies on

8  materials outside the pleadings in making its ruling, it must treat

9  the motion to dismiss as one for summary judgment and give the non-

10 moving party an opportunity to respond.  FED. R. CIV. P. 12(d);

11 <u>see</u> <u>United States v. Ritchie</u>, 342 F.3d 903, 907 (9th Cir. 2003).  "A

12 court may, however, consider certain materials — documents attached

13 to the complaint, documents incorporated by reference in the

14 complaint, or matters of judicial notice — without converting the

15 motion to dismiss into a motion for summary judgment."  <u>Ritchie</u>, 342

16 F.3d at 908.

17     If documents are physically attached to the complaint, then a

18 court may consider them if their "authenticity is not contested" and

19 "the plaintiff's complaint necessarily relies on them."  <u>Lee</u>, 250

20 F.3d at 688 (citation, internal quotations, and ellipsis omitted).

21 A court may also treat certain documents as incorporated by

22 reference into the plaintiff's complaint if the complaint "refers

23 extensively to the document or the document forms the basis of the

24 plaintiff's claim."  <u>Ritchie</u>, 342 F.3d at 908.  Finally, if

25 adjudicative facts or matters of public record meet the requirements

26 of Fed. R. Evid. 201, a court may judicially notice them in deciding

27 a motion to dismiss.  <u>Id.</u> at 909; <u>see</u> FED. R. EVID. 201(b) ("A

28

judicially noticed fact must be one not subject to reasonable
dispute in that it is either (1) generally known within the
territorial jurisdiction of the trial court or (2) capable of
accurate and ready determination by resort to sources whose accuracy
cannot reasonably be questioned.").

B. Discussion

1. Plaintiffs' First Cause of Action

Under Nevada law, a plaintiff claiming intentional interference
with contractual relations must establish "(1) a valid and existing
contract; (2) the defendant's knowledge of the contract; (3)
intentional acts intended or designed to disrupt the contractual
relationship; (4) actual disruption of the contract; and (5)
resulting damage." J.J. Industries, LLC v. Bennett, 71 P.3d 1264,
1267 (Nev. 2003). Defendants contend that Plaintiffs' complaint
(#1-1) does not include sufficient factual allegations supporting a
claim that Defendants had an intent to disrupt the contractual
relationship at issue here, or a claim that there was actual
disruption of the contract and resulting damage.

Plaintiffs allege in their complaint (#1-1) that Defendants
made efforts to and succeeded in "circumvent[ing] interfer[ing] and
obstruct[ing] [sic] the Treasury Solutions contract and, in
particular, compensation provisions of Treasury Solution's contract
with the State of Nevada." (Compl. ¶ 48 (#1-1).) Plaintiff also
includes a more specific allegation that "Ed Ferko, Senior Manager
for the Education Markets Group for Vanguard and/or other employees
or representatives of Vanguard suggested to the Nevada State
Treasurer's Office that the State should 'conclude' or terminate its

9

compensation arrangement with Treasury Solutions." (<u>Id.</u> ¶ 37.)
Plaintiff also alleges that Jim Fadule, President of Upromise and
UII, and/or other employees or representatives of UII "began to
pressure or otherwise suggest to the Nevada State Treasurer's Office
that the compensation arrangement with Treasury Solutions should be
discontinued, concluded or terminated." (<u>Id.</u> ¶ 38.)

Defendants contend that these statements are not sufficient to
establish intent under Nevada law. Specifically, Defendants argue
that Plaintiffs must establish that Defendants had a motive to
induce a breach of contract. Defendants' arguments regarding intent
are better suited to a motion for summary judgment, and shall be
denied on that basis. While Plaintiffs may fail in establishing the
elements necessary to prove a tortious interference claim at the
summary judgment stage, Plaintiffs have stated facts sufficient to
survive a motion to dismiss regarding the element of intent.

More troublesome, however, is the required element of
disruption of the contract. <u>See</u> <u>J.J. Industries</u>, 71 P.3d at 1267.
Plaintiffs do not state that there was an actual breach of the
contract between the State of Nevada and Plaintiffs. Plaintiffs
also fail to make specific factual allegations establishing that
Defendants acted to disrupt the contract in any impermissible
manner. Instead, Plaintiffs make vague statements that they have
received no compensation from their contract with the State since
January 2007, and that Defendants have collected fees contractually
obligated to be paid to Treasury Solutions, but also claim that the
contract has not been terminated. Plaintiffs fail to allege in
sufficient detail what the original contract between the State of

10

1  Nevada and Plaintiffs was, and whether the amendments that followed
2  resulted in a breach of that contract.  Unless there is a breach of
3  contract, Plaintiffs cannot prevail on a claim of tortious
4  interference with contractual relations, and therefore Plaintiffs'
5  first cause of action shall be dismissed without prejudice as to all
6  Defendants.[1]

7              2. Plaintiffs' Second Cause of Action

8       Plaintiffs also allege tortious interference with prospective
9  business advantage based on the same factual allegations upon which
10 the first cause of action, tortious interference with contractual
11 relations, rests.

12      In order to prevail on a claim for tortious interference with
13 prospective business advantage, Plaintiffs must prove the following
14 elements: "(1) a prospective contractual relationship between the
15 plaintiff and a third party; (2) the defendant's knowledge of this
16 prospective relationship; (3) the intent to harm the plaintiff by
17 preventing the relationship; (4) the absence of privilege or
18 justification by the defendant; and, (5) actual harm to the
19 plaintiff as a result of the defendant's conduct."  Consol.
20 Generator-Nevada, Inc. v. Cummins Engine Co., Inc., 971 P.2d 1251,
21 1255 (Nev. 1998) (per curiam).

22

23 _____

24     [1] Defendant VMC correctly points out that Plaintiffs have made
   no specific allegations against it.  Other than the general statements
25 encompassing all Defendants, Defendant VMC is not mentioned at all in
   Plaintiffs' complaint.  While we will dismiss Plaintiffs' first cause
26 of action against all Defendants for failure to state a claim, we note
   that Plaintiffs must allege specific facts against each Defendant that
27 justify keeping the Defendant in the case.

28                              11

1    Plaintiffs allege that the contract between Treasury Solutions

2  and the State of Nevada "created a prospective relationship through

3  which the Plaintiff would have gained compensation and commercial

4  advantage."  (Compl. ¶ 63 (#1-1).)  Plaintiffs fail, however, to

5  allege any specific facts supporting the existence of a prospective

6  business advantage.  Plaintiffs' only reference to such a

7  prospective relationship is in Plaintiffs' second claim for relief,

8  in which Plaintiffs list, in conclusory fashion, the necessary legal

9  elements of such a claim, excluding the element of absence of

10 privilege or justification by the defendant.

11    Plaintiffs may not base their prospective business advantage

12 claim on their existing contract with the State.  See, e.g., Klein

13 v. Freedom Strategic Partners, LLC, 595 F. Supp. 2d 1152, 1163 (D.

14 Nev. 2009).  Plaintiffs contend, in their response (#25) to

15 Defendant Vanguard and VMC's motion to dismiss (#20), that

16 Defendants "cause[d] the State to refuse to deal with or enter into

17 any contracts with the Plaintiffs." (Pls' Opp. at 16 (#25).)

18 Plaintiffs go on to cite provisions in the complaint that do not

19 support Plaintiffs' contention.  Therefore, because Plaintiffs fail

20 to allege the existence of any prospective business advantage

21 outside of their current and past contractual relationship with the

22 State, Plaintiffs' second cause of action shall be dismissed without

23 prejudice as to all Defendants.

24           3. Plaintiffs' Request for Leave to Amend

25    In their opposition (#25), Plaintiffs request leave to amend

26 and attached a proposed amended complaint.  Defendants object to

27 this method of requesting leave to amend, and request that

28                              12

1   Defendants be granted an opportunity to challenge any motion to
2   amend.  We shall deny Plaintiffs' request for leave to amend without
3   prejudice, and Plaintiffs shall be granted time in which to file a
4   motion for leave to amend.

5

6   **III. Defendants' Motion to Dismiss Under FRCP 12(b)(7)**

7       Defendants Upromise and UII filed a motion to dismiss pursuant
8   to Fed. R. Civ. P. 12(b)(7) for failure to join an indispensable
9   party (#21).  Defendants contend that the State of Nevada is a
10  necessary and indispensable party because Plaintiffs are alleging
11  that Defendants interfered in Plaintiffs' contractual and
12  prospective relationship with the State of Nevada.  While we dismiss
13  Plaintiffs' claims on a different basis, we will consider
14  Defendants' motion to dismiss for failure to join an indispensable
15  party (#21) because granting the motion would render any motion to
16  amend futile.

17      "The framework for determining whether a party is necessary and
18  indispensable is provided by Fed. R. Civ. P. 19(a)." <u>Am. Greyhound</u>
19  <u>Racing, Inc. v. Hull</u>, 305 F.3d 1015, 1022 (9th Cir. 2002).  A party
20  is necessary within the meaning of Rule 19 if:

21          (A) in that person's absence, the court cannot accord complete
            relief among existing parties; or
22          (B) that person claims an interest relating to the subject of
            the action and is so situated that disposing of the action in
23          the person's absence may:
                (i) as a practical matter impair or impede the person's
24              ability to protect the interest; or
                (ii) leave an existing party subject to a substantial risk
25              of incurring double, multiple, or otherwise inconsistent
                obligations because of the interest.
26

27

28                                      13

1   F<span>ED</span>. R. C<span>IV</span>. P. 19(a)(1);  <u>See</u> <u>Pit River Home & Agr. Co-op. Ass'n v.</u>

2   <u>United States</u>, 30 F.3d 1088, 1099 (9th Cir. 1994) ("Based on Rule

3   19(a), we evaluate whether (1) complete relief is possible among the

4   existing parties and (2) the absent party has a legally protected

5   interest in the outcome of the litigation.").

6        We note at the outset that in general, a plaintiff need not sue

7   all potential joint tortfeasors.  <u>Temple v. Synthes Corp., Ltd.</u>, 498

8   U.S. 5, 7 (1990).  Furthermore, the controversy in a tortious

9   interference case is between the plaintiff and the defendant alleged

10  to have been interfering with plaintiffs' contract.  <u>See</u> <u>Arkansas v.</u>

11  <u>Texas</u>, 346 U.S. 368, 369-70 (1953).  There is no requirement that

12  the contracting party is necessary and indispensable to such a suit.

13  <u>See</u> <u>id.</u>

14       Here, Plaintiffs are seeking damages, not injunctive relief.

15  While Defendants bring up concerns about invalidating Defendants'

16  contract with the State, Plaintiffs have not requested that we

17  invalidate any contract, distinguishing this case from those

18  Defendants cite in which injunctive relief is requested, or cases in

19  which the subject property's titleholder is not a party to the suit.

20  <u>See, e.g.</u>, <u>Acierno v. Preit-Rubin, Inc.</u>, 199 F.R.D. 157, 163 (D.

21  Del. 2001).

22       We will be required to adjudge whether there was a disruption

23  of contract between Plaintiffs and the State, but such a

24  determination will not necessarily harm the State of Nevada's

25  interests such that the State of Nevada is a necessary and

26  indispensable party.  The mere fact that a judgment against

27  Defendants may serve as "persuasive precedent" for any potential

28
                                    14

breach of contract suit by Plaintiffs against the State of Nevada is insufficient.  See Huber v. Taylor, 532 F.3d 237, 250 (3rd Cir. 2008).

Rule 19(a)(1)(B)(ii) requires an examination of existing parties' risk of incurring multiple or inconsistent obligations because of the State of Nevada's interest in this suit.  The risk, however, must be substantial.  FED. R. CIV. P. 19(a)(1)(B)(ii). Here, there is a risk to Defendants of inconsistent obligations. Plaintiffs' complaint alleges that Defendants have been paid fees contractually obligated to be paid to Plaintiffs, and paid to the State of Nevada fees contractually obligated to be paid to Plaintiffs.  If Plaintiffs were to prevail in this suit, Defendants may be obligated to pay fees to Plaintiffs that they have contracted to pay to the State of Nevada.  We do not find, however, that this risk is substantial enough that the State of Nevada is a necessary party under Rule 19.  An award of damages could be fashioned to compensate Plaintiffs for any damages suffered due to tortious interference of their contract with the State of Nevada without invalidating Defendants' obligations to the State of Nevada, or requiring Defendants to "annually forward the same $500,000 to both the State of Nevada and Plaintiffs," as Defendants fear.

The State of Nevada is not a necessary party under the Rule 19(a) factors, and therefore there is no need to examine whether the State of Nevada is an indispensable party.  Defendants' motion to dismiss the complaint pursuant to F.R.C.P. 12(b)(7) (#21) shall, therefore, be denied.

## **IV. Conclusion**

Defendants' motions to dismiss (## 20, 22) pursuant to F.R.C.P. 12(B)(6) shall be granted as to all of Plaintiffs' claims. Plaintiffs' claim for tortious interference with contractual relations shall be dismissed because Plaintiffs fail to allege with any specificity an actual breach of Plaintiffs' contract with the State of Nevada.  Plaintiffs' claim for tortious interference with prospective business advantage shall be dismissed because Plaintiffs have not alleged the existence of a prospective business advantage separate from the contractual relationship upon which Plaintiffs' first cause of action is based.

Defendants' motion to dismiss (#21) pursuant to F.R.C.P. 12(b)(7) shall be denied because the State of Nevada is not a necessary party to this action.  The contracting party induced to breach by a defendant in a tortious interference action is not, by its status alone, a required party.  Plaintiffs do not seek injunctive relief, and complete relief can be accorded among all existing parties without requiring that the State of Nevada be joined.

**IT IS, THEREFORE, HEREBY ORDERED** that Defendants The Vanguard Group, Inc. and Vanguard Marketing Corporation's motion to dismiss for failure to state a claim under FRCP 12(b)(6) (#20) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Upromise, Inc. and Upromise Investments, Inc.'s motion to dismiss the complaint pursuant to FRCP 12(b)(6) (#22) is **GRANTED**.

16

1  **IT IS FURTHER ORDERED** that Defendants Upromise, Inc. and
2  Upromise Investments, Inc.'s motion to dismiss based on failure to
3  join an indispensable party (#21) is **DENIED** without prejudice.

4

5  **IT IS FURTHER ORDERED** that Plaintiffs' request, contained in
6  the opposition (#25), for leave to amend the complaint pursuant to
7  FRCP 15 is **DENIED** without prejudice.  Plaintiffs shall have fourteen
8  (14) days from the date of filing of this order in which to file a
9  motion to amend the complaint.  Thereafter, Defendants shall have
10 fourteen (14) days to respond, and Plaintiffs shall have seven (7)
11 days to reply.

12

13

14 DATED: December 22, 2010.

15                                    _Edward C. Reed._

16                                    UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28
                                    17