UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TREASURY SOLUTIONS HOLDINGS, INC., a Georgia corporation, successor in interest to TREASURY SOLUTIONS, LLC, a Georgia limited liability company, f/k/a GIF PLAN ADVISORS, LLC, a Georgia limited liability company, successor in interest to GIF SERVICES, LLC, a Georgia limited liability company,<br><br>        Plaintiffs,<br><br>  v.<br><br>UPROMISE, INC., a Delaware corporation; UPROMISE INVESTMENTS, INC., a Delaware corporation; THE VANGUARD GROUP, INC., a Pennsylvania corporation; JOHN DOES 1 through 10, individuals; ABLE-BAKER COMPANY 1-10, partnerships; and BLACK & WHITE INC. 1-10, corporations,<br><br>        Defendants. | 3:10-CV-00031-LRH-WGC<br><br>ORDER |

Before the Court is Defendants Upromise, Inc. ("Upromise") and Ascensus Broker Dealer Services, Inc.'s ("ABDS"), formerly known as Upromise Investments, Inc.'s (collectively, "Defendants") Motion to Dismiss the Second Amended Complaint ("SAC"). Doc. #92.[1] Plaintiff

---

[1] Refers to the Court's docket number.

Treasury Solutions Holdings, Inc. ("Treasury Solutions") filed a Response (Doc. #93), to which Defendants replied (Doc. #95).

**I.    Facts and Background**

This litigation revolves around the State of Nevada's 529 College Savings Plan ("CSP") program. The State of Nevada contracted with Treasury Solutions to create the CSP program, and contracted separately with Defendants to manage and administer that program. There is no direct contractual relationship between Treasury Solutions and Defendants. On May 11, 2006, the State of Nevada Board of Examiners approved an Amendment to the Upromise contract that relieved Treasury Solutions of further obligation to provide services to the State in exchange for a reduction in compensation. Treasury Solutions alleges that Defendants thereafter coerced the State to remove certain terms from this amendment, specifically a term requiring automatic payments to Treasury Solutions to ensure that fees were paid. Treasury Solutions further alleges that Defendants coerced the State to breach its contract with Treasury Solutions and cease payments that were already owed. On December 28, 2006, the Board of Examiners approved a new amendment terminating its contract with Treasury Solutions and assigning its fees to Upromise.

In a related State court action,[2] Treasury Solutions sued the State of Nevada for breach of contract. On December 28, 2009, Treasury Solutions filed the present action against Defendants, alleging claims for tortious interference with contractual relations and tortious interference with prospective business advantage.[3] *See* Doc. #1. On January 6, 2012, the Court granted Defendants' Motion to Dismiss with prejudice, finding that Treasury Solutions' claim was barred by the statute of limitations and that amendment would be futile. Doc. #61. On March 27, 2014, the Ninth Circuit Court of Appeals reversed the Court's dismissal, finding that a tortious interference claim

---

[2] *Treasury Solutions et al. v. State of Nevada et al.*, Case No. 11-OC-00268, in the First Judicial District Court in and for the County of Carson City, Department II.

[3] Treasury Solutions' claim for interference with prospective economic advantage no longer remains. *See* Doc. #87.

does not accrue until the plaintiff has incurred actual damages, which in this case would have occurred "on some unspecified date in January 2007."  Doc. #69.

On May 30, 2014, the Court granted Defendants' Motion to Stay Proceedings.  Doc. #80.  Treasury Solutions filed its Second Amended Complaint on January 5, 2015.  Doc. #87.  On February 17, 2015, Treasury Solutions filed a Notice of Voluntary Dismissal with prejudice against defendant The Vanguard Group, Inc.  Doc. #90.  Defendants filed the present Motion to Dismiss on February 25, 2015.  Doc. #92.

**II.    Legal Standard**

Defendants seek dismissal for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard.  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008).  That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The 8(a)(2) pleading standard does not require detailed factual allegations, but a pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To satisfy the plausibility standard, 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility when the pleaded factual content allows the Court to draw the reasonable inference, based on the Court's "judicial experience and common sense," that the defendant is liable for the misconduct alleged.  *See id.* at 678-79.  The plausibility standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* at 678 (internal quotation marks omitted).

3

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* The "factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Moreover, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 681) (brackets in original) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 556 U.S. at 681). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id*.

**III.   Discussion**

Treasury Solutions now raises two causes of action: (1) tortious interference with contractual relations; and (2) breach of contract. Doc. #87.

**A.  Tortious Interference with Contractual Relations**

To establish a claim for intentional interference with contractual relations, plaintiff must establish (1) the existence of a valid and existing contract; (2) defendant's knowledge of the contract; (3) intentional acts to disrupt the contractual relationship; (4) actual disruption; and (5) damage. *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).

Defendants raise two privileges that they contend bar Plaintiff's claim. First, Defendants argue that they are entitled to an absolute privilege because they acted pursuant to a legal duty to advise the State. *See Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirming the district court's grant of summary judgment on defamation and tortious interference claims because the defendant's conduct was absolutely privileged based on a legal duty to act). Treasury Solutions argues that *Deloitte* does not indicate that the Nevada Supreme Court has

adopted absolute privilege in the context of intentional interference with contractual relations. Importantly, Nevada law has previously applied this privilege to interference with prospective economic advantage, but not interference with existing contractual relations. Indeed, the Ninth Circuit has stated that "Nevada has not yet held that a plaintiff alleging intentional interference with contractual relationship must also prove the absence of privilege or justification." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1055 n.2 (9th Cir. 2008) (noting, however, that Nevada law requires plaintiff to prove absence of a privilege for a claim of intentional interference with prospective economic advantage).

The Court agrees with Treasury Solutions that *Deloitte* did not expressly extend the requirement for a plaintiff to prove absence of an absolute privilege to claims for intentional interference with contractual relations. In *Deloitte*, the plaintiff "alleged that Deloitte published defamatory statements . . . and knowingly interfered with [plaintiff's] contractual relationships and prospective economic advantage." *Deloitte*, 302 P.3d at 1100. The Court ultimately held: "Deloitte's communications are subject to an absolute privilege, precluding appellants' defamation claim. In that regard, we also conclude that appellants' tortious interference claim is precluded because Deloitte's communications and conduct is afforded an absolute privilege." *Id.* at 1102. *Deloitte* involved claims for interference with contractual relations *and* prospective economic advantage. It is well-established that an absolute privilege applies to claims of intentional interference with prospective economic advantage. *Nationwide Transp.*, 523 F.3d at 1055 n.2. *Deloitte* applied the absolute privilege, but did not state whether it did so based solely on the claim for interference with prospective economic advantage, or whether it was extending the privilege to claims based on interference with existing contractual relations. Importantly, the cases cited by the Nevada Supreme Court to support their application of the absolute privilege both discuss prospective economic advantage, not existing contractual relations. *See Wichinsky v. Mosa*, 847 P.2d 727, 729 (Nev. 1993); *Las Vegas-Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of S. Nev.*, 792 P.2d 386, 388 (Nev. 1990). The Court finds in the absence of an express extension of the

5

privilege to existing contractual relations, that Nevada law does not yet acknowledge such a privilege in this context.[4]

Second, Defendants argue that as a result of advising the State, a sovereign entity, their conduct is privileged, and cannot be the proximate cause of any alleged damages. Defendants cite *Sessions Tank Liners, Inc. v. Joor Manufacturing, Inc.*, in which the Ninth Circuit held in the context of a claim for interference with prospective economic advantage, "that the California courts would not permit recovery . . . for tortious interference with prospective economic advantage, where the damages all flow from government decisions of disinterested public officials." 17 F.3d 295, 302 (9th Cir. 1994). The court reasoned: "To impose tort liability for damages resulting from valid governmental decisions by public officials requires an examination of the motives of those officials that judges, federal or state, are reluctant to undertake." *Id.*

The California Supreme Court, in a case cited extensively by *Sessions*, emphasized that "[t]he chief practical distinction between interference with contract and interference with prospective economic advantage is that a broader range of privilege to interfere is recognized when the relationship or economic advantage interfered with is only prospective." *Pac. Gas & Elec. Co.*

---

[4] Defendants argue that this District has frequently applied the absolute privilege to claims based on interference with existing contractual relations. However, none of the cases cited by Defendants expressly apply the privilege to interference with existing contracts claims. *See, e.g.*, *George v. Countrywide Bank, N.A.*, No. 2:12-cv-0624, 2013 WL 1314979, at *4-5 (D. Nev. Mar. 28, 2013) (dismissing the claim not based on absolute privilege, but because the plaintiff did not make sufficient factual allegations); *Nev. Ass'n Servs., Inc. v. First Am. Title Ins. Co.*, No. 2:11-cv-2015, 2012 WL 3096706, at *5 (D. Nev. July 30, 2012) (noting that the plaintiff did not allege absence of a justification, but basing dismissal on the fact that the plaintiff "failed to sufficiently allege that Defendants induced third parties to breach their contracts"); *Shoemaker v. Northrop Grumman Corp.*, No. 2:08-cv-1793, 2011 WL 6026122, at *6 (D. Nev. Dec. 2, 2011) (analyzing interference with existing contracts and prospective economic advantage concurrently, and finding primarily that the plaintiff "failed to show that Defendants committed any intentionally wrongful acts"). Another recent case noted that "[t]he absolute privilege applies not only to claims for defamation, but also to derivative claims such as intentional interference with contractual relations or prospective business advantage, or civil conspiracy." *Grand Canyon Skywalk Dev., LLC v. Cieslak*, No. 2:13-cv-0596, 2015 WL 1805055, at *6 (Apr. 20, 2015). Although this appears to recognize the existence of a privilege in this context, the case only involved interference with prospective business advantage, did not recognize any past difference between existing contractual relations and prospective business advantage, and did not discuss *Deloitte*.

*v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).[5] *Sessions* discusses antitrust law and interference with prospective economic advantage, and does not address interference with existing contractual relations. *See Sessions*, 17 F.3d at 298-302. Accordingly, the Court declines to apply this privilege, which has not to the Court's knowledge been adopted by Nevada courts, to bar Treasury Solutions' claim for interference with contractual relations.

Having determined that Defendants' stated privileges do not apply, the Court considers whether Treasury Solutions has adequately pleaded a claim for intentional interference with contractual relations. The SAC alleges the existence of a contract (Doc. #87 ¶¶16-18, 23, 34, 76),[6] Defendants' knowledge of this contract (*Id.* ¶77), intentional acts to disrupt the contract (*Id.* ¶¶44-46, 78), actual disruption (*Id.* ¶¶39-40, 56, 63, 79), and damages (*Id.* ¶¶62-63, 67, 81). Accordingly, Treasury Solutions has adequately pleaded its claim for intentional interference with contractual relations. *See J.J. Indus.*, 71 P.3d at 1267.

**B. Breach of Contract**

The SAC alleges that it entered into a "Tolling and Standstill Agreement" with Upromise on November 17, 2008 (Doc. #87 ¶84; *id.*, Ex. 6), which provided that "the parties agreed to not raise the statute of limitations as a defense, except to the extent such defense existed on that date of signing of the Tolling Agreement" (*Id.* ¶85). The SAC alleges further that Upromise breached this agreement when it "sought and obtained dismissal of Plaintiffs' claims on statute of limitations grounds." *Id.* ¶87.

---

[5] Courts in this district have previously cited this California precedent as persuasive in cases involving tortious interference. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. KB Home*, 740 F. Supp. 2d 1192, 1198 (D. Nev. 2010).

[6] On December 22, 2010, Judge Reed dismissed this claim largely because Treasury Solutions failed "to allege in sufficient detail what the original contract between the State of Nevada and Plaintiffs was, and whether the amendments that followed resulted in a breach of contract." Doc. #40 at 10. Although Judge Reed dismissed the First Amended Complaint on statute of limitations grounds, he noted that the amended complaint did not cure this defect. Doc. #61 at 14. The Court finds that the SAC adequately alleges the existence of a valid contract between the State and Treasury Solutions.

To prevail on a breach of contract claim, a plaintiff must demonstrate: (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) a breach by the defendant; and (4) damages resulting from defendant's breach. *See* Restatement (Second) of Contracts § 203 (2007); *see also Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (1865)).

There is no dispute that the parties entered into a Tolling Agreement on November 17, 2008. Doc. #87, Ex. 6. This agreement provided in part that "[a]ll parties agree not to raise the statute of limitations or laches as a defense to any action by any other party." *Id.* at 2. The agreement also provided that it would last for sixty days, and be "automatically renewed" for another sixty days, "unless any party gives notice in writing more than ten (10) days prior to the expiration that it does not wish the Tolling Agreement extended." *Id.* The SAC does not allege that this agreement was ever renewed, nor does it state the date on which Defendants allegedly breached the agreement. This alone is grounds to dismiss the breach of contract claim because without stating the date of an alleged breach of a time-centric contract, the SAC fails to state a claim for breach of contract. *Iqbal*, 556 U.S. at 678 (finding that a complaint must "state a claim to relief that is plausible on its face"). Accordingly, the Court will grant Defendants' Motion as to Treasury Solutions' breach of contract claim.

Even if the SAC included all relevant dates, it would still fail. It is clear from the record that the Tolling Agreement automatically renewed on January 16, 2009. Doc. #92 at 26. On March 5, 2009, Treasury Solutions sent Defendants a letter, stating that it did "not wish to extend the Tolling Agreements," adding that "the tolling period will end and the agreements terminate on March 17."[7] *Id.*, Ex. I. As required by the contract, this letter was sent more than ten days before the renewed agreement was set to expire. *Id.* Defendants first raised a statute of limitations defense on March 8, 2010. Doc. #22 at 25-28. Under the plain language of the contract, and

---

[7] On January 29, 2009, the Nevada Supreme Court held that the applicable statute of limitations for a claim for intentional interference with contractual relations was three years, not two years. *Stalk v. Mushkin*, 199 P.3d 838, 839 (Nev. 2009).

Treasury Solutions' termination of the contract, Defendants were under no obligation to refrain from raising a statute of limitations defense on March 8, 2010.  Accordingly, the Court grants Defendants' Motion to Dismiss the breach of contract claim with prejudice because amendment would be futile.  *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (stating that courts can decline leave to amend based on "bad faith, undue delay, prejudice to the opposing party, futility of amendment," or because the plaintiff previously amended the complaint without healing its defects).

**IV.    Conclusion**

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. #92) is GRANTED in part and DENIED in part.  Plaintiffs' breach of contract claim is dismissed with prejudice.

IT IS SO ORDERED.

DATED this 24th day of June, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE