1

2

3

4

5

6  UNITED STATES DISTRICT COURT

7  DISTRICT OF NEVADA

8  * * *

9  TREASURY SOLUTIONS HOLDINGS,                    )          3:10-CV-00031-LRH-WGC
   INC., a Georgia corporation, successor in      )
10  interest to TREASURY SOLUTIONS, LLC, a         )
   Georgia limited liability company, f/k/a GIF   )
11  PLAN ADVISORS, LLC, a Georgia limited          )          ORDER
   liability company, successor in interest to GIF )
12  SERVICES, LLC, a Georgia limited liability     )
   company,                                        )
13                                                  )
                    Plaintiffs,                     )
14                                                  )
    v.                                              )
15                                                  )
   UPROMISE, INC., a Delaware corporation;         )
16  UPROMISE INVESTMENTS, INC., a                  )
   Delaware corporation; THE VANGUARD              )
17  GROUP, INC., a Pennsylvania corporation;       )
   JOHN DOES 1 through 10, individuals;            )
18  ABLE-BAKER COMPANY 1-10,                        )
   partnerships; and BLACK & WHITE INC.            )
19  1-10, corporations,                            )
                                                    )
20                  Defendants.                     )
                                                    )

21

22      Before the Court is Defendants Upromise, Inc. ("Upromise") and Ascensus Broker Dealer

23  Services, Inc.'s ("ABDS"), formerly known as Upromise Investments, Inc.'s (collectively,

24  "Defendants") Motion to Certify Question of Law to the Nevada Supreme Court.  Doc. #99.[1]

25  ///

26

---

[1] Refers to the Court's docket number.

1  Plaintiff Treasury Solutions Holdings, Inc. ("Treasury Solutions") filed a Response (Doc. #103), to

2  which Defendants replied (Doc. #107).

3  **I.      Facts and Background**

4          This litigation revolves around the State of Nevada's 529 College Savings Plan ("CSP")

5  program.  The State of Nevada contracted with Treasury Solutions to create the CSP program, and

6  contracted separately with Defendants to manage and administer that program.  There is no direct

7  contractual relationship between Treasury Solutions and Defendants.  On May 11, 2006, the State

8  of Nevada Board of Examiners approved an Amendment to the Upromise contract that relieved

9  Treasury Solutions of further obligation to provide services to the State in exchange for a reduction

10  in compensation.  Treasury Solutions alleges that Defendants thereafter coerced the State to remove

11  certain terms from this amendment, specifically a term requiring automatic payments to Treasury

12  Solutions to ensure that fees were paid.  Treasury Solutions further alleges that Defendants coerced

13  the State to breach its contract with Treasury Solutions and cease payments that were already owed.

14  On December 28, 2006, the Board of Examiners approved a new amendment terminating its

15  contract with Treasury Solutions and assigning its fees to Upromise.

16          In a related State court action,[2] Treasury Solutions sued the State of Nevada for breach of

17  contract.  On December 28, 2009, Treasury Solutions filed the present action against Defendants,

18  alleging claims for tortious interference with contractual relations and tortious interference with

19  prospective business advantage.[3]  *See* Doc. #1.  On January 6, 2012, the Court granted Defendants'

20  Motion to Dismiss with prejudice, finding that Treasury Solutions' claim was barred by the statute

21  of limitations and that amendment would be futile.  Doc. #61.  On March 27, 2014, the Ninth

22  Circuit Court of Appeals reversed the Court's dismissal, finding that a tortious interference claim

23

24          [2]  *Treasury Solutions et al. v. State of Nevada et al.*, Case No. 11-OC-00268, in the First Judicial
District Court in and for the County of Carson City, Department II.

25          [3]  Treasury Solutions' claim for interference with prospective economic advantage was not included
26  in the Second Amended Complaint.  *See* Doc. #87.

1   does not accrue until the plaintiff has incurred actual damages, which in this case would have

2   occurred "on some unspecified date in January 2007."  Doc. #69.

3          On May 30, 2014, the Court granted Defendants' Motion to Stay Proceedings.  Doc. #80.

4   Treasury Solutions filed its Second Amended Complaint on January 5, 2015.  Doc. #87.

5   Defendants filed a Motion to Dismiss the Second Amended Complaint on February 25, 2015.

6   Doc. #92.  On June 25, 2015, the Court granted Defendants' Motion to Dismiss in part, but denied

7   the Motion as to Treasury Solutions' claim for tortious interference with contractual relations.

8   Doc. #96.  The Court denied the Motion as to this claim after finding that a 2013 Nevada Supreme

9   Court decision, *Cucinotta v. Deloitte & Touche, LLP*, did not expressly apply an absolute privilege

10  for a party's legal duty to advise the state.  *Id*. at 4-6.  Defendants filed the present Motion to

11  Certify Question of Law on July 23, 2015.  Doc. #99.

12  **II.     Legal Standard**

13         Nevada Rule of Appellate Procedure 5 grants the Nevada Supreme Court the power to

14  "answer questions of law certified to it by the Supreme Court of the United States, a Court of

15  Appeals of the United States or of the District Columbia, a United States District Court, or a United

16  States Bankruptcy Court."  The United States Supreme Court has acknowledged that "certification

17  of novel or unsettled questions of state law for authoritative answers by a State's highest court . . .

18  may save 'time, energy, and resources and hel[p] build a cooperative judicial federalism.'"

19  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 77 (1997) (quoting *Lehman Bros. v. Schein*,

20  416 U.S. 386, 391 (1974)).  Classification is not mandatory, and "when a federal court confronts an

21  issue of state law which the state's highest court has not addressed, the federal court's task typically

22  is to predict how the state's highest court would decide the issue."  *Carolina Cas. Ins. Co. v.

23  McGhan*, 572 F. Supp. 2d 1222, 1225 (D. Nev. 2008).  "When a party requests certification for the

24  first time after losing on the issue, that party must show 'particularly compelling reasons' for

25  certifying the question."  *Id.* at 1226 (quoting *Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir.

26  1984)).

3

III.    **Discussion**

Defendants request that the Court certify the following question to the Nevada Supreme Court: "does the absolute privilege adopted by the Nevada Supreme Court in *Deloitte* apply to a claim for tortious interference with an existing contract?"  Doc. #99 at 2.  The Court previously declined to read *Deloitte* as extending this absolute privilege to claims for tortious interference with an existing contract—as opposed to claims for tortious interference with prospective advantage—at the pleading stage because case law indicated clear precedent applying this privilege to claims based on prospective advantage, but not existing contracts.  Doc. #96 at 5-6; *see Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1055 n.2 (9th Cir. 2008) (noting that while Nevada law requires plaintiff to prove absence of a privilege for intentional interference with prospective advantage, "Nevada has not yet held that a plaintiff alleging intentional interference with contractual relationship must also prove the absence of privilege or justification.").  Absent express language changing this precedent, the Court declined to adopt a rule requiring plaintiff to plead absence of a privilege of justification to survive a motion to dismiss a claim for intentional interference with an existing contract.[4]  The Court notes that Defendants relied on *Deloitte* in their Motion to Dismiss the Second Amended Complaint to argue that "absence of privilege or justification" is a "sixth element" of a claim for intentional interference with an existing contract.  Doc. #92 at 8.  Thus, the relevant question was whether *Deloitte* requires a plaintiff to plead absence of a privilege or justification to survive a Motion to Dismiss.

Defendants argue that *Deloitte* changed the existing precedent, and that a plaintiff must now plead absence of an absolute privilege to survive a Motion to Dismiss a claim for interference with existing contract.  In *Deloitte*, the plaintiff "alleged that Deloitte published defamatory

---

[4] The Court also found that the privilege for advising a sovereign entity does not apply.  Doc. #96 at 6-7; *see Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) ("The chief practical distinction between interference with contract and interference with prospective economic advantage is that a broader range of privilege to interfere is recognized when the relationship or economic advantage interfered with is only prospective.").

4

1    statements . . . and knowingly interfered with [plaintiff's] contractual relationships and prospective

2    economic advantage." *Deloitte*, 302 P.3d at 1100.  The Court ultimately held: "Deloitte's

3    communications are subject to an absolute privilege, precluding appellants' defamation claim.  In

4    that regard, we also conclude that appellants' tortious interference claim is precluded because

5    Deloitte's communications and conduct is afforded an absolute privilege."  *Id.* at 1102.  *Deloitte*

6    involved a single claim for interference with contractual relations *and* prospective economic

7    advantage.  *Deloitte* applied the absolute privilege, but did not state whether it did so based solely

8    on the claim for interference with prospective economic advantage, or whether it was extending the

9    privilege to claims based on interference with existing contractual relations.  Importantly, the cases

10   cited by the Nevada Supreme Court to support their application of the absolute privilege both

11   discuss prospective economic advantage, not existing contractual relations.  *See Wichinsky v. Mosa*,

12   847 P.2d 727, 729 (Nev. 1993); *Las Vegas-Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of S.*

13   *Nev.*, 792 P.2d 386, 388 (Nev. 1990).

14           The Nevada Supreme Court has held that certification is appropriate when its answers may

15   be determinative of part of the federal case, there is no controlling Nevada precedent, and the

16   answer will help settle important questions of law.  *Volvo Cars of N. Am., Inc. v. Ricci*, 137 P.3d

17   1161, 1164 (Nev. 2006) (adopting California's liberal standard).  Ultimately, *Volvo Cars*

18   determined that certification was not appropriate because the questions posed "would not 'be

19   determinative' of any part of the case, but rather, would resolve only a discrete evidentiary issue."

20   *Id*.  Defendants argue that certification would be determinative here because "application of the

21   privilege would lead to dismissal of Treasury Solutions' interference claim," which is Treasury

22   Solutions' only surviving cause of action.  Doc. #99 at 5.  Treasury Solutions correctly points out

23   that even if the Nevada Supreme Court determined that the privilege applied, "there would still

24   exist a question of fact as to whether or not the conduct complained of here falls under that

25   privilege" and bars this cause of action.  Doc. #103 at 6.

26   ///

1    *Deloitte* specified that "[t]he class of absolutely privileged communications recognized by

2    this court remains narrow and is limited to those communications made in judicial or quasi-judicial

3    proceedings and communications made in the discharge of a duty under express authority of law."

4    302 P.3d at 1102.  Here, even if the privilege were to apply to intentional interference with

5    contractual relations, a question would remain regarding whether the privilege applied, i.e., whether

6    the communications at issue were made in quasi-judicial proceedings or pursuant to a duty under

7    express authority of law.  In *Deloitte*, the communications were made under express authority of

8    law because "[w]hen an accounting firm becomes aware of information that an illegal act has

9    occurred or may occur, then it must adequately inform the appropriate level of management of the

10   issue . . . about the detected illegal acts as soon as practicable."  *Id.* (citing 15 U.S.C. § 78j-

11   1(b)(1)(B)).  It remains unclear whether such a duty would apply here, or whether Defendants'

12   conduct would fall under any such duty.  Thus, it appears that an answer by the Nevada Supreme

13   Court would not be determinative of a part of this case.

14       In the absence of clear state precedent, "the federal court's task typically is to predict how

15   the state's highest court would decide the issue."  *Carolina Cas. Ins. Co.* , 572 F. Supp. 2d at 1225.

16   The Court again notes that courts have clearly held that "Nevada has not yet held that a plaintiff

17   alleging intentional interference with contractual relationship must also prove the absence of

18   privilege or justification."  *Nationwide Trans. Fin.*, 523 F.3d at 1055 n.2.  Defendants' contention

19   that *Deloitte* requires plaintiffs to plead that "absence of privilege or justification" as a "sixth

20   element" to a claim for intentional interference with an existing contract is simply not supported by

21   the case law following *Deloitte*.  Nevada courts have long held that to plead intentional interference

22   with contractual relations, the plaintiff must allege: (1) existence of a valid contract; (2) defendant's

23   knowledge of the contract; (3) intentional acts designed to disrupt the contractual relationship; (4)

24   actual disruption; and (5) resulting damage.  *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev.

25   2003).  More than two years after *Deloitte*, courts in this district still list these five elements for a

26   claim for intentional interference with existing contract, and the Court is aware of no case that has

1    added a sixth element of "absence of privilege or justification" to this tort.  *See, e.g.*, *LT Int'l Ltd. v.*

2    *Shuffle Master, Inc.*, 8 F. Supp. 3d 1238, 1248 (D. Nev. 2014); *Phillips v. Dignified Transition*

3    *Solutions*, No. 2:13-cv-2237, 2015 WL 5056406, at *4 (D. Nev. Aug. 25, 2015).

4            The Court reaffirms its prior finding that absent a clear statement extending this absolute

5    privilege to claims for interference with an existing contract, the Court declines to dismiss a claim

6    that properly alleges the elements of intentional interference with an existing contract under

7    established Nevada Supreme Court precedent.  The Court also finds that certification of

8    Defendants' question of law to the Nevada Supreme Court is not warranted because Defendants

9    have not established that an answer would be determinative of a part of this case, even under

10   Nevada's more liberal standard.  Accordingly, the Court denies Defendants' Motion to Certify.

11   **IV.    Conclusion**

12           IT IS THEREFORE ORDERED that Defendants' Motion to Certify Question of Law to the

13   Nevada Supreme Court (Doc. #99) is DENIED.

14           IT IS SO ORDERED.

15           DATED this 2nd day of November, 2015.

16                                                                              _____

                                                                                LARRY R. HICKS

17                                                                              UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

7